1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Blair Lindquist,                              )     No. CV 06-597-TUC-FRZ
                                              )
            Plaintiff,                        )     **ORDER**
                                              )
vs.                                           )
                                              )
                                              )
Farmers Insurance Company of Arizona, et)
al.,                                          )
                                              )
            Defendants.                       )
_____)

Pending before the Court is Defendants' Motion to Dismiss.  For the reasons stated below, the motion is denied in part and granted in part.[1]

I.  **STANDARD OF REVIEW**

The dispositive issue raised by a motion to dismiss for failure to state a claim is whether the facts as pleaded, if established, support a valid claim for relief.  *See Neitzke v. Williams*, 490 U.S. 319, 328-329 (1989).  In reviewing a motion to dismiss for failure to state a claim, a court's review is limited to the contents of the complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).   All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party.  *Id*.  A complaint should not be dismissed unless it appears beyond doubt that a plaintiff can prove

_____

[1]The Court has determined that the issues have been fully and adequately briefed and that oral argument would not aid the Court in its understanding of the issues.  Thus, as the Court finds that this case is appropriate for resolution without oral argument, the parties' requests for oral argument are denied.

1   no set of facts in support of his claim that would entitle him to relief.  *Id.*; *see also Bell Atl.*

2   *Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)("While a complaint attacked by a Rule

3   12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

4   to provide the grounds of his entitlement to relief requires more than labels and conclusions,

5   and a formulaic recitation of the elements of a cause of action will not do . . . Factual

6   allegations must be enough to raise a right to relief above the speculative level ....")(internal

7   quotes and citations omitted).[2]

8   **II.  <u>BACKGROUND</u>**

9       Due to a water leak in his plumbing system, Plaintiff's home was damaged.  At the time,

10  Plaintiff had a homeowner's insurance policy through Farmers Insurance Company of

11  Arizona ("Farmers Arizona").  *See* Third Amended Complaint ("Complaint") at ¶14.  As

12  such, Plaintiff submitted an actual cash value ("ACV") claim for the damage sustained to his

13  home to Farmers Arizona.  *Id.*  Although Farmers Arizona paid a portion of the claim, and

14  properly subtracted an amount for depreciation and the deductible, it refused to pay any

15  amount due for general contractor overhead, profit ("O & P"), and taxes (collectively "OP

16  & T").  *Id.*  "Farmers Arizona's refusal was in compliance with Defendants' policy of not

17  paying for OP & T unless and until OP & T costs are actually incurred by its insureds."  *Id.*

18  "However, Defendants' failure to pay OP & T was in contravention of the terms of

19  Defendants' policies which requires payment of 'actual cash value' which, in repairs

20  involving three or more trades, includes OP & T."  *Id.* at ¶15.

21      Plaintiff further alleges that "Defendants withhold OP & T from other insureds who make

22  claims under the same or similar insurance policies, even though Defendants acknowledge

23

24      [2]The Court notes that Plaintiff, relying on *Wright v. Schock*, argues that it is premature to
25  address Defendants' motion to dismiss as this case is still in its early stages and a motion for class
    certification and related discovery have yet to occur.  *See* 742 F.2d 541 (9th Cir. 1984).  However,
26  nothing in *Wright* prohibits an early ruling on dispositive motions prior to a ruling on class
    certification; *Wright* leaves this issue to the discretion of the Court.  *See id.*  Furthermore, *Wright*
27  affirmed the trial court's decision to grant the defendant's dispositive motion prior to a ruling on
28  class certification.  *See id.*

and accept damage estimates that include amounts for OP & T . . . When Defendants issue its insurance policies, they agree to pay actual cash value, which means repair or replacement cost, less depreciation.  Repair or replacement costs include any costs that an insured is reasonably likely to incur in repairing or replacing a covered loss . . .  Defendants routinely deduct, or fail to include OP & T when they make an actual cash value of the damage payment under their insurance policies" *Id.* at ¶¶16, 21, 22.  Lastly, Plaintiff alleges that "Defendants' implementation of a company-wide policy (which it knows is based on incorrect, unreasonable, and bad faith interpretation of the relevant coverage provision in its insurance policy) has led to a systematic practice of attempting to undervalue claims, and a systematic practice of attempting to settle claims for less than the amount to which its insureds are entitled."  *Id.* at ¶22.

Based on these allegations, Plaintiff asserts claims against Farmers Arizona and its related insurance entities for breach of contract, "joint venture," and "alter ego/single business enterprise."  Plaintiff also seeks to assert these claims against the Defendants on behalf of a nationwide class of similarly situated insureds.

## III.  DISCUSSION

### A.  Class Allegations: Class Definition and Predominance

Defendants argue that Plaintiff's purported class action allegations must be dismissed as he fails to satisfy two prerequisites to sustain a class action: (1) a properly defined class such that purported members of the class can be identified by reference to objective criteria; and (2) common issues that predominate over individual issues.  As the Court finds that these prerequisites have been adequately satisfied at this early stage in the litigation, Defendants' motion to dismiss the class allegations is denied.

#### 1.  Class Definition: Identifying the Class by Reference to Objective Criteria

As to the properly defined class prerequisite, Defendants generally argue that because a "reasonably likely" standard applies to any substantive breach of contract claim for failure to pay OP & T in this case, an objectively ascertainable class is foreclosed in this action.

1    In arguing that a "reasonably likely" standard applies in this case, Defendants cite to

2    *Tritschler v. Allstate Insurance Company*.  *See* 213 Ariz. 505, 515 (Ct. App. 2006).  In

3    *Trischler*, the Arizona Court of Appeals held that "actual cash value in adjusting a property

4    loss includes any cost that an insured would be <u>reasonably likely</u> to incur in repairing or

5    replacing a covered loss, regardless of whether the insured intends to repair or replace the

6    property. <u>And, if the cost to repair or replace the damaged properly would **likely require** the</u>

7    <u>services of a general contractor, the contractor's overhead and profit fees should be included</u>

8    <u>in determining actual cash value</u>, even when an insured ultimately elects to complete

9    personally the needed repairs." 213 Ariz. 505, 515 (Ct. App. 2006)(emphasis added).  As

10   Plaintiff is specifically claiming that Farmers Arizona cheated him out of the cost stemming

11   from general contractor's overhead and profit, "likely require" is the specific language used

12   by *Tritcher* to cover these circumstances. *Id.*  Thus, if the cost to properly repair or replace

13   the damage to an insured's home would "likely require" the services of a general contractor,

14   then the insurer should include overhead and profit in determining actual cash value. *Id.*

15    The Court notes that throughout Defendants' briefs, they refer to a "reasonably likely" (as

16   opposed to "likely require") standard to support their arguments for dismissal of the class

17   allegations. As *Tritschler* specifically used the term "likely require" as applied to an insurer's

18   duty to pay for general contractor's overhead and profit, the Court will also use that same

19   *Tritschler* language. Thus, hereinafter, the Court will only refer to a "likely require" standard

20   when discussing Defendants' arguments regarding the standard applicable in this case as that

21   is simply the specific language used in *Tritschler*.

22   As stated in Moore's Federal Practice, Defendants argue that "having a precisely defined

23   class makes it possible for a court to determine whether the proposed class satisfies the other

24   requirements of Rule 23 . . . [T]he court must be able to resolve the question of whether class

25   members are included or excluded from the class by reference to objective criteria . . . A

26   class definition is inadequate if a court must make a determination of the merits of the

27   individual claims to determine whether a particular person is a member of the class.  In other

28   words, the class should not be defined in terms of whether its members were treated

1    'properly,' 'adequately,' 'reasonably,' or 'constitutionally,' because then class membership

2    depends on a determination of the merits as to each potential class member.  This conclusion

3    follows from the rule that courts may not decide the underlying merits of the claims at the

4    class certification stage."  *See* 5 James Wm. Moore, et al., *Moore's Federal Practice*

5    §§23.21[3][a], 23.21[3][c], 23.21[3][d] (3rd Ed. 2007)(emphasis added).  As Defendants argue

6    that a "likely require" standard applies, they contend that Plaintiff's class definition must

7    require a subjective, individualized inquiry into the "likely require" question for each and

8    every purported member of the class.  Thus, Defendants argue that the class definition in this

9    case necessarily lacks objective ascertainability and would require the Court to impermissibly

10    delve into the merits of each claim to determine who is a member of the class.  The Court

11    disagrees.

12        While Defendants correctly discuss the general rule pertaining to a proper class definition,

13    they do not adequately show that the class definition at issue in this case falls outside of the

14    general rule.  Indeed, a review of the class definition proposed by Plaintiff shows that class

15    members can be identified by reference to objective criteria.  Plaintiff defines the class as

16    follows:

17
18
19
20        All policyholders (1) who own or owned real property located in the United States which was insured by Defendants, (2) who submitted to Defendants a claim for a covered loss to the insured real property during the period from four years prior to the filing of the Original Complaint in this case to the present, (3) whose claim files indicate the anticipated involvement of a minimum of three trades to complete the repair, and (4) received a payment from Defendants which resulted from a calculation of actual cash value that withheld, or failed to include, a percentage for general contractor's overhead and profit, and sales tax.

21
22    *See* Complaint at ¶25.  There is no reference to the "likely require" standard in the definition,

23    and identification of class members does not require the Court to delve into the "likely

24    require" question to determine who are members of the class.  Rather, class members can be

25    identified by objective criteria that are contained in the claim files maintained by Defendants.

26    Defendants' files would reflect the objective information encompassed by Plaintiff's class

27    definition which includes: the location of the real property insured by Defendants; the names

28    of insureds who submitted a claim for a covered loss; whether the Defendants' own files

1    indicate the anticipated involvement of at least three trades; and whether Defendants

2    withheld OP & T from any payment.  If a purported class member meets these objective

3    criteria, they would be included in the class; if one did not meet these objective criteria, they

4    would not be included in the class.  Thus, an individualized inquiry into the merits of every

5    potential class member is not required to determine who is a proper member of the class

6    definition at issue in this case.  *See*, *e.g.*, *Melot v. Oklahoma Farm Bureau Mutual Insurance*

7    *Company*, 87 P.3d 644, 647 (Okla. Ct. App. 2003)(class plaintiffs asserted the same type of

8    claims and class definition as the case at bar and class certification was affirmed; the court

9    found that the class definition was proper as the "class definition does not state that the class

10   is composed of those with claims for repairs involving three or more trades, but rather those

11   where *insurer's own worksheets* indicate the need for three or more trades.  Under this

12   definition, there would be no need for the trial court to make individualized determinations,

13   because the determinations have already been made by Insurer")(emphasis in the original);

14   *see also Burgess v. Farmers Insurance Company, Inc.*, 151 P.3d 92 (Okla. 2006)(class

15   plaintiffs asserted analogous claims and class definition as the case at bar and class

16   certification was affirmed); *Mills v. Foremost Insurance Company*, - F.3d -, 2008 WL 45806

17   (11th Cir. Jan. 4, 2008)(holding that the district court erred in its conclusion at the motion to

18   dismiss stage that individual issues predominated over common issues under circumstances

19   similar to this case; remanding the case to permit discovery pertaining to class certification).

20   Accordingly, the Court denies Defendants' motion to dismiss based on an improper class

21   definition.[3]

22   _____

23   [3]The Court notes that Defendants also cite *Crosby v. Social Security Administration*, 796
     F.2d 576 (1st Cir. 1986) and *Davoll v. Webb*, 160 F.R.D. 142 (D. Colo. 1995) as two cases that

24   exemplify the general rule that a class definition is improper if it requires an individualized inquiry
     into the merits of every potential class members' claims to determine who is a member of the class.

25   However, as explained above, the class definition at issue does not require such an individualized
     inquiry and is based on objective criteria.  Further, unlike the class definition in this case, the class

26   definition in *Crosby* and *Davoll* actually incorporated a subjective "reasonableness" inquiry to
     determine who would be members of the class.  *See Davoll*, 160 F.R.D. at 144 (proposed class

27   definition in Americans with Disabilities Act case would seek to include those "who have been or
     will be denied <u>reasonable</u> accommodation of their disabilities by defendants")(emphasis added);

28

### 2. Predominance

Defendants next argue that Plaintiff's purported class action must fail as it fails to satisfy the predominance requirement of FED.R.CIV.P. 23(b)(3). As relevant to Defendants' position, Rule 23(b)(3) states that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Similar to Defendants' arguments relating to the class definition, Defendants argue that individual questions of law or fact will predominate in this case as a "likely require" standard applies to the merits of Plaintiff's claim for OP & T pursuant to *Tritschler*. Defendants argue that whether a property loss will "likely require" the services of a general contractor such that an insured would be entitled to O & P will require a subjective, individual inquiry for every class member. As such, Defendants argue that this case is not subject to generalized proof, individual issues therefore predominate, and a class action is inappropriate.

To support their position, Defendants rely on *Schuetz v. Banc One Mortgage Corporation*, 292 F.3d 1004 (9th Cir. 2002); *Mills v. Foremost Insurance Company*, 2006 WL 3313945 (M.D. Fla. 2006); and *Salesin v. State Farm & Casualty Company*, 2003 WL 22299828 (Mich. Ct. App. 2003). The Court does not find these cases persuasive. *Schuetz* is a case that focuses almost exclusively on the interpretation of the Real Estate Settlement Procedures Act ("RESPA") as it applies to yield spread premiums, and has nothing to do

---

*Crosby*, 796 F.2d at 578 (proposed class definition in Social Security disability case challenging the amount of time the Administration took to adjudicate cases defined the class as all claimants "who have not had a hearing held within a <u>reasonable</u> time and/or who have not had a decision rendered in such a hearing for benefits within a <u>reasonable</u> time"; the First Circuit largely denied class certification based on the "reasonable time" definition as the Supreme Court in *Heckler v. Day*, 467 U.S. 104 (1984) had recently ruled that mandatory time limits to adjudicate disability claims could not be imposed on the Administration as "it would be an unwarranted judicial intrusion into this pervasively regulated area for federal courts to issue injunctions imposing deadlines with respect to future disability claims.")(emphasis added)(internal quotes and citations omitted). It should also be noted that some courts have found a class definition proper even where "reasonableness" was part of the class definition. *See Barnett v. Bowen*, 794 F.2d 17, 23-24 (2nd Cir. 1986); *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 88-89 (E.D.N.Y. 1989). Lastly, as discussed in the text of this Order, the Court finds *Burgess*, *Melot*, and *Mills* more persuasive authority.

with a homeowner's right to recover O & P under an insurance policy.  *See Schuetz* at 1005-
14.  *Schuetz* only summarily addresses the periphery class action issue under RESPA in a few
brief sentences, and never states that having a "reasonableness" standard dictates that
individual issues must predominate in cases falling outside of RESPA.  *See id.* at 1014.  In
*Mills*, which is a brief, unpublished case, the district court denied standing to the purported
class based on an interpretation of the home insurance contract that is contrary to *Tritschler*
and the weight of authority addressing an insured's right to recover O & P; thereafter, the
district court alternatively concluded that the adjustment of O & P must involve
individualized inquiries that predominate over common issues.  *See Mills* at 2006 WL
3313945 at *1-2.  Subsequently, as Defendants' supplemental citation of authority reflects,
the district court's order in *Mills* was completely reversed by the Eleventh Circuit on January
4, 2008.  *See Mills v. Foremost Insurance Company*, - F.3d -, 2008 WL 45806 (11th Cir. Jan.
4, 2008)(holding that the district court erred in its interpretation of the homeowner's contract
as to the entitlement to OP & T, that the district court's interpretation was contrary to the
weight of authority on the issue, and erred in its conclusion at the motion to dismiss stage
that individual issues predominated over common issues; remanding the case to permit
discovery pertaining to class certification).  Lastly, *Salesin* is also a brief, unpublished case
that summarily concludes that a class action by homeowners seeking O & P  necessarily
involves only individualized proof that precludes a class action.  *See Salesin*, 2003 WL
22299828 at *3.  Furthermore, *Salesin* appears to hold that the requirement of individualized
damages determinations precludes class certification; this holding is contrary to the weight
of authority that holds otherwise. *See* 2 Alba Conte, et al.,  *Newberg on Class Actions* §4:26
at p. 220 (4th Ed. 2003)("In most cases, the amount of damages suffered is an individual
matter, but the Advisory Committee Notes state that such needed individual proof of
damages will not preclude a finding of predominance."); 2 William W. Schwarzer, et al.,
*Federal Civil Procedure Before Trial*, §10:429.5 (2007)("The fact that damages vary from
class member to class member does not itself defeat class certification"); *In re Visa
Check/MastercardMoney Antitrust Litig.*, 280 F.3d 124, 140 (2nd Cir. 2001)("The

1  predominance requirement calls only for predominance, not exclusivity, of common
2  questions.").

3     As previously highlighted  in the class definition section, the Court finds *Burgess*, *Melot*
4  and *Mills* to be the more persuasive decisions in the context of predominance as applied to
5  the case at bar.  *See Burgess v. Farmers Insurance Company, Inc.*, 151 P.3d 92 (Okla. 2006);
6  *Melot v. Oklahoma Farm Bureau Mutual Insurance Company*, 87 P.3d 644 (Okla. Ct. App.
7  2003); *Mills v. Foremost Insurance Company*, - F.3d -, 2008 WL 45806 (11th Cir. Jan. 4,
8  2008).  Similar to this case, the plaintiffs in *Burgess*, *Melot*, and *Mills* asserted a class action
9  claiming that home insurers improperly excluded O & P from actual cash value payments to
10 its insureds.  *See id.*  In addition, as in this case, the plaintiffs in *Burgess* and *Melot* advanced
11 a class definition and theory of recovery claiming that they were entitled to an allowance for
12 general contractor's O & P whenever three or more trades were required (as reflected by
13 insurer's own records) as a general contractor would be needed under these circumstances.
14  *See id.*  Likewise, the defendant insurers in *Melot, Burgess*, and *Mills* claimed that whether
15 an insured was entitled to an allowance for general contractor's O & P depended on the
16 unique facts of every single property damage claim and that individualized issues necessarily
17 predominated over common issues such that a class action was improper.  *See id.*  In *Burgess*,
18 which was also a class action O & P case against Farmers Insurance, the Oklahoma Supreme
19 Court rejected the insurer's arguments, and found that common issues predominated over
20 individual issues; the court stated in relevant part:

21     At the heart of this controversy is Insureds' allegation that there is an  industry standard
        "three trade rule," which dictates that upon a determination that three trades are
22     implicated in the repair of property, then a general contractor is presumed to be needed
        to coordinate, supervise and oversee the repair and thus, a 20 per cent O & P payment
23     is included in the calculation of the ACV settlement. Insurer denies the existence of a
        rigid "three trade rule" and argues that such rule, if applied, would impermissibly result
24     in expansion of Insurer's contractual obligations. Insurer asserts that instead of
        following such a rule, Insurer's adjusters use complete individual discretion and follow
25     a "common sense" approach to determine whether the property damage in each
        individual case requires a general contractor. Thus, Insurer claims it is a case-by-case
26     determination whether to include the 20 per cent O & P payment at the time of the
        ACV settlement of the claim. While the trial court expressly avoided reaching any
27     determination on the merits, it examined the "three trade rule" solely for the purpose
        of identifying the class (class members included only those claimants with claim files
28     reflecting that the involvement of three or more trades was anticipated in the property

repair at the time of ACV adjustment) . . . The trial court ultimately agreed with Insureds and determined that questions of law or fact common to members of the class predominated over questions affecting only individual members, noting that "the group requesting class certification seeks to remedy a common legal grievance" and that although damage amounts may vary, "the breach of contract, fraud and bad faith claims arise from the same or similar acts or omissions for each Class Member" . . . We hold the trial court did not abuse its discretion in its determination that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, as the entire class of Insureds' theory of recovery derives from the allegations that Insurer systematically failed to pay the 20 per cent general contractor's O & P when three or more trades were anticipated in the repair and that Insureds were entitled to information concerning O & P and payment for the O & P amount at the time of ACV settlement regardless of whether subsequent repair costs (if Insured elected to repair the property) included the 20 per cent amount. Insurer would have us reject class certification on the basis of a determination regarding the veracity of its defense on the merits-that Insurer in fact did not operate pursuant to an across-the-board pattern of underpayment of claims, but rather, made individual assessments as to the propriety of O & P payments on every claim. We express no opinion on the merits and our determination on class certification should not be taken as any indication of how a jury might properly decide these fact questions . . . [I]n recognition of the rule that it is inappropriate to consider the merits of a claim when considering whether a class should be certified, we refrain from ruling on the merits of the alleged "three trade rule," as this is a jury question . . . Insurer's assertion that the "three trade rule" is invalid and/or that it did not operate pursuant to an objective standard in the payment of O & P may still be raised . . . at a trial on the merits, but it is inappropriate for us to determine its validity at this stage of the proceedings. If Insurer is successful on the merits on this issue and the jury rejects Insureds' assertions as to the Insurer's alleged systematic underpayment of claims and failure to disclose information concerning Insureds' potential entitlement to such payments, then the result will be binding on the entire class of Insureds . . . As for Insurer's argument that individual issues predominate over questions common to the class, we note that "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory" . . . Here, the acts or omissions of Insurer which constitute the alleged breaches of contract, bad faith and/or fraud (specifically, Insurer's alleged systematic failure to pay general contractor's O & P at the time of ACV settlement when due and failure to disclose information to Insureds concerning O & P) are the same or similar acts or omissions for each class member. Even though damages amounts may vary, common questions predominate where the acts or omissions are the same.

*Burgess*, 151 P.3d at 93-94, 99-101 (internal citations omitted); *see also Melot*, 87 P.3d at 648-649 (under analogous circumstances as *Burgess* and the case at bar, affirming the trial court's predominance finding that "'Plaintiffs sought to remedy a common legal grievance. The alleged breaches of contract and/or fraud are the same or similar acts for each Class Member and common questions predominate, even though damage amounts may vary'").

- 10 -

1    The Court notes that Defendants' attempt to distinguish *Burgess* is unpersuasive. *See*

2    Defendants' Reply Brief at 6-7.[4]   Defendants argue that *Burgess* did not conduct the

3    "rigorous analysis" that Rule 23 imposes on federal courts. However, as stated in *Burgess*

4    and a review of the Oklahoma and federal class action provisions reflect, Oklahoma's class

5    action statute essentially mirrors FED.R.CIV.P. 23. *See Burgess*, 151 P.3d at 98. The

6    Supreme Court has stated that a class action may only be certified if a trial court is satisfied,

7    after a "rigorous analysis," that the requirements of Rule 23 are met. *See General Telephone*

8    *Co of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). A review of the thorough opinion in

9    *Burgess* shows that a "rigorous analysis" was indeed conducted. Defendants state: "As

10   *Burgess* notes, Oklahoma courts may conditionally certify a class. That is not what federal

11   courts do." *See* Defendants' Reply Brief at 6. Defendants cite to page 98 of the *Burgess*

12   opinion regarding this issue. What *Burgess* stated was: "Abuse of discretion occurs if the

13   record fails to support the conclusion that each of the . . . statutory prerequisites for class

14   certification are met . . . In a close question as to certification, the correct action is to sustain

15   certification because if later developments occur at trial, which demonstrate that the order

16   is ill-advised, the order may be modified prior to a determination on the merits." *Burgess*,

17   151 P.3d at 98. *Burgess* never stated that Oklahoma courts can conditionally certify a case

18   where a trial court is not satisfied that all of the class action requirements have been met after

19   _____

20   　　　[4]The Court also notes that in emphasizing the individualized nature of O & P determinations,
     Defendants argued that *Tritschler* "remanded even though *both sides* had moved for summary

21   judgment and the plaintiff, who had testified that he 'coordinated the work of at least five different
     tradespeople in completing the repairs to his house,' specifically asked for an appellate court

22   'determin[ation] that he is entitled to overhead and profit on his claim.'" *See* Defendants' Reply
     Brief at 5-6. The reason the court of appeals in *Tritschler* did not rule on the merits of the O & P

23   claim is that it was a periphery issue in the trial court that was not fully addressed by the parties; as
     such, it would have been inappropriate to address at the appellate level as the case was being

24   remanded to the trial court for further proceedings. *See Tritschler*, 213 Ariz. at 516 ("Nevertheless,
     the parties did not focus in their motions for summary judgment on whether a general contractor

25   would have been necessary to complete the remaining repairs. Much of the evidence we have
     reviewed was presented in support of other motions before the court. Rather than rule on this matter

26   based on this limited evidence, we remand this issue to the trial court so it may consider this matter
     after each party has had the opportunity to conduct discovery and present evidence on this precise

27   issue.").

28

1   a "rigorous analysis."  Furthermore, a class certification order may be altered or amended

2   before a final decision on the merits of the case.  *See* FED.R.CIV.P. 23(c)(1)(C)("An order

3   that grants or denies class certification may be altered or amended before final judgment.");

4   2 William W. Schwarzer, et al., *Federal Civil Procedure Before Trial*, §10:615 (2007)("The

5   order granting or denying class certification . . . may be altered or amended before the

6   decision on the merits."); *Id.* at §10:629 ("A court may choose to decertify a class action on

7   motion by a party or sua sponte . . .").

8        Defendants also criticize *Burgess* because it states that it is inappropriate to consider the

9   merits of the underlying claims in the case in deciding whether the requirements for class

10  certification have been satisfied; Defendants state that "[f]ederal courts hold the opposite."

11  *See* Defendants' Reply Brief at 7 n. 17.  Federal courts do not hold the opposite regarding

12  this general rule.  While preliminary inquiry into the merits is sometimes appropriate to the

13  extent necessary to evaluate class certification issues that happen to be intertwined with facts

14  relating to the underlying merits, *Burgess* correctly states the general rule followed by federal

15  courts that trial courts may not decide the merits of the case or consider the likelihood of

16  success on the merits in determining whether the requirements of Rule 23 class certification

17  are met.  *See* 5 James Wm. Moore, et al., *Moore's Federal Practice* §24.45[4] (3rd Ed.

18  2007)("The general rule, however, is that on a motion for class certification, a court may not

19  decide the merits of the case or consider the likelihood of success or failure on the merits.

20  Nonetheless, courts may go beyond the pleadings and may allow discovery and hear

21  evidence when necessary to make the factual determinations that Rule 23 requires"); *Staton*

22  *v. Boeing* Co., 327 F.3d 938, 954 (9th Cir. 2003)("Although some inquiry into the substance

23  of a case may be necessary to ascertain satisfaction of the . . . requirements of Rule 23 . . .

24  it is improper to advance a decision on the merits to the class certification stage.")(internal

25  quotes and citations omitted); *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 428 (4th

26  Cir. 2003)(rejecting defendant's argument that class certification was improper as individual

27  inquiries were required to show proximate causation; reasoning that "the sufficiency of the

28  evidence as to proximate cause presented by Plaintiffs goes to the merits of Plaintiffs' case-an

1   issue the Supreme Court has held courts may not consider in ruling on a motion for class

2   certification.)(citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)).

3       Like *Burgess* and *Melot*, the issues in this case are also largely mirrored in the Eleventh

4   Circuit's persuasive decision in *Mills*. *See Mills v. Foremost Insurance Company*, - F.3d -,

5   2008 WL 45806 (11th Cir. Jan. 4, 2008).  In *Mills*, as in this case, the insurer, Foremost

6   Insurance, filed a motion to dismiss arguing that predominance could not be satisfied as

7   "individual issues will abound . . . [because] the issue of whether general contractor overhead

8   and profit is properly owing to each of its insureds still depends on whether the services of

9   a general contractor would be **reasonably required** under the circumstances."  *Id.* at *8

10  (emphasis added).  Nonetheless, the Eleventh Circuit recognized that the case could be

11  subject to generalized proof and that common issues could predominate as:

12      The Millses' complaint contends that the common issue to all class members is whether
13      Foremost improperly excluded overhead, profit, and taxes when paying the actual cash
        value of their hurricane damage losses. The Millses point out: (1) that Foremost's own
14      adjusters already have prepared claims estimates of the repair costs for each class
        member's hurricane-damage claim; (2) that the plaintiffs accept Foremost's own
15      adjusters' estimates as to the extent of each repair cost for each class member; and (3)
        that all that the class members seek to recover is a percentage of those cost estimates
16      for overhead, profit, and sales tax line items, which they claim Foremost improperly
        excluded from its actual cash value payment to each class member insured with this
17      same Policy who had not actually completed their repairs at the time of the actual cash
        value payment. The Millses argue that the amount due to each class member can thus
18      be determined with relative ease through basic forensic accounting using Foremost's
        own claims data . . . the Millses stress that proof of whether a general contractor's
19      services or sales taxes were reasonably likely to be incurred can be determined from
        the face of Foremost's own adjusters' estimates, which Plaintiffs accept, and through
20      forensic review of Foremost's own adjusters' estimates. The Millses contend that
        industry professionals make such determinations every day in the course of their
21      adjusting duties. The Millses assert that the class's acceptance of the damage estimates
        of Foremost's own adjusters for purposes of their lawsuit obviates the need to
22      painstakingly analyze each class member's individual circumstances.

23  *Id.* at 8. Despite a "reasonably required" standard, the Eleventh Circuit held that the district

24  court erred in granting the insurer's motion to dismiss for lack of predominance of common

25  issues; rather, the court held that at a minimum, discovery on these relevant class certification

26  issues was required and that an evidentiary hearing may also be warranted to address these

27  issues.  *See id.* at *8-9.

28

In light of *Mills*, *Melot*, and *Burgess*, the Court similarly finds that despite the "likely require" standard at issue, this case may be subject to generalized proof such that common issues predominate over individual issues.   As such, Defendants' motion to dismiss Plaintiff's class action claims at this stage of the litigation for lack of predominance is denied.   Discovery on the class certification issues pertaining to this case is certainly warranted.   Subsequent to this Order, if the parties are able to stipulate or otherwise informally agree as to the scope of discovery pertaining to class certification issues, the Court will likely adopt the discovery plan advanced by the parties.   However, if the parties are unable to reach an agreement, the Court will impose deadlines and will almost certainly allow any relevant class certification discovery which will shed light on the factors encompassed by FED.R.CIV.P. 23(a) and (b); *Mills*, *Melot*, and *Burgess* are also instructive on these discovery issues.   The Court will issue a separate order setting a Rule 16 Conference.

**B. Standing and the Non-Contracting Defendants**

Defendants argue that Plaintiff is attempting to bring a class action that is much broader than his constitutional standing in this action permits.   Defendants point out that Plaintiff's property is in Arizona, his  insurance contract is only with Farmers Arizona, and that he has no contract with the other named Defendants in this action (i.e., Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers Group, Inc. - collectively referred to as the "Non-Contracting Defendants").   Thus, Defendants argue that Plaintiff is not an insured of the Non-Contracting Defendants.   Nonetheless, Defendants emphasize that Plaintiff is attempting to bring a nationwide class action against the Non-Contracting Defendants for breach of insurance contracts with their insureds; these are insureds that did not have any contract with Farmers Arizona, but had insurance contracts with the Non-Contracting Defendants in other states not covered by Farmers Arizona.   Plaintiff argues, however, that in light of his allegations supporting a joint venture, alter ego, and single business enterprise among Farmers Arizona and the Non-Contracting Defendants, he has standing to assert a nationwide class action (as

opposed to a class action composed of just Farmers Arizona's insureds) for breach of contracts occurring between the Non-Contracting Defendants and their insureds in states not covered by Farmers Arizona.  As correctly stated in Defendants' reply brief, Defendants "agree that plaintiff's alleged equitable theories of derivative liability give him standing to sue the Non-Contracting Defendants.  But his standing to do so is limited to suing them only for alleged damages to Farmers Arizona's insureds like himself, not for alleged damages to the Non-Contracting Defendants' insureds."  *See* Defendants Reply Brief at 8-9.  The Court agrees with Defendants.

As commentators have explained, a plaintiff purporting to bring a class action must satisfy constitutional standing[5] requirements as "threshold individual standing is a prerequisite for all actions, including class actions.  Such individual standing must be independently demonstrated . . . and one cannot acquire individual standing by virtue of bringing a class action."  *See* 1 Alba Conte, et al., *Newberg on Class Actions* §2:5 at p. 75 (4th Ed. 2003); *see also id.* at §2:9 at p. 109 ("Care must be taken, when dealing with apparently standing-related concepts in a class action context, to analyze individual standing requirements separately and apart from Rule 23 class prerequisites.  Though the concepts appear related, in that they both seek to measure whether the proper party is before the court to tender issues for litigation, they are in fact independent criteria.  They spring from different sources and serve different functions.  Often satisfaction of one set of criteria can exist without the other.  The application of the wrong set of criteria in a particular instance may lead to an erroneous conclusion."); 5 James Wm. Moore, et al., *Moore's Federal Practice* §23.63[1][b] at p. 23-291(3rd Ed. 2007)("The named plaintiff in a class action must meet all the jurisdictional requirements to bring an individual suit asserting the same claims, including standing.  That is, an actual 'case or controversy must exist between the named plaintiff and the defendants.

---

[5]To establish Article III standing, a plaintiff must demonstrate: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servcs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

1    If a complaint includes multiple claims, at least one named class representative must have
2    Article III standing to raise each claim . . . Constitutional standing is a necessary prerequisite
3    to class certification because without standing the court lacks the power to hear the suit . .
4    . If the named plaintiff does not have standing to bring a particular claim, the named plaintiff
5    may not represent the class with respect to that claim").

6        The Supreme Court has repeatedly stated that standing is distinct from the Rule 23 class
7    action requirements, and that standing is a threshold requirement that must be satisfied in
8    every case. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)("[I]f none of the named
9    plaintiffs purporting to represent a class establishes the requisite of a case or controversy with
10   the defendants, none may seek relief on behalf of himself or any other member of the
11   class."); *Allee v. Medrano*, 416 U.S. 802, 828-829 (1979)(Burger, C.J., concurring in the
12   result in part and dissenting in part)("[S]tanding must be personal to and satisfied by those
13   who seek to invoke the power of federal courts . . . a named plaintiff cannot acquire standing
14   to sue by bringing his action on behalf of others who suffered injury which would have
15   afforded them standing had they been named plaintiffs; it bears repeating that a person
16   cannot predicate standing on injury which he does not share. Standing cannot be acquired
17   through the back door of a class action.")(internal quotes and citations omitted); *Simon v.*
18   *Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n. 20 (1976)("That a suit
19   may be a class action, however, adds nothing to the question of standing, for even named
20   plaintiffs who represent a class "must allege and show that they personally have been injured,
21   not that injury has been suffered by other, unidentified members of the class to which they
22   belong and which they purport to represent.")(quoting *Warth v. Seldin*, 422 U.S. 490, 502
23   (1975)).

24       In addition to the authority above, Defendants have cited numerous other cases generally
25   supporting its position that despite closely interconnected business entities, this does not
26   confer standing on a plaintiff to sue non-contracting defendants for breach of contracts with
27   their insureds (i.e., contracts to which plaintiff was not a party); these authorities also
28   emphasize that the "juridical links" doctrine is only appropriately applicable in the context

1    of Rule 23 class action analysis, as opposed to the separate, threshold issue of standing.[6] *See*,

2    *e.g.*, *Aguilar v. Allstate Fire and Casualty Insurance Co.*, 2007 WL 734809 (E.D. La.

3    2007)(plaintiff filed class action for breach of contract and bad faith against numerous related

4    Allstate insurance entities alleging that they engaged in a "wrongful scheme to delay, deny

5    or underpay claims"; holding that the named plaintiff did not have standing to sue the

6    Allstate entities with whom he had no insurance policy); *Henry v. Circus Circus Casinos,*

7    *Inc.*, 223 F.R.D. 541 (D. Nev. 2004)(plaintiffs filed a time and wage class action against their

8    employer Mandalay Corp. and related business entities; holding that the named plaintiffs

9    only had standing against their direct employer and that the juridical links doctrine was

10   inapplicable to standing analysis); *Forsythe v. Sun Life Financial, Inc.*, 417 F.Supp.2d 100

11   (D. Mass. 2006)(plaintiffs who only owned shares in two of sixty-two affiliated mutual funds

12   at issue purported to assert claims against all sixty-two funds in the "MFS fund complex";

13   holding that the named plaintiffs only had standing as to the two funds they owned shares in

14   and that the juridical links doctrine did not apply to standing);  *Siemers v. Wells Fargo &*

15   *Co.*, 2006 WL 3041090 (N.D. Cal. 2006)(holding that the juridical links doctrine was only

16   applicable in the context of Rule 23 requirements, as opposed to standing analysis); *Papoola*

17   *v. MD-Individual Practice Ass'n*, 230 F.R.D. 424 (D. Md. 2005)(same); *In re Eaton Vance*

18   *Corp. Sec. Litig.*, 220 F.R.D. 162 (D. Mass 2004)(same).

19

20

21

22       [6]As courts have recognized, the "juridical link doctrine arose out of the Ninth Circuit's
decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973). *La Mar* held that

23   a plaintiff without a cause of action against a specific defendant cannot fairly and adequately protect
the interests of those who do have such causes of action, for purposes of Rule 23(a). Nevertheless

24   . . . the court went on to hold that if the plaintiffs as a group-named and unnamed-have suffered an
identical injury at the hands of several parties related by way of a conspiracy or concerted scheme,

25   or otherwise juridically related in a manner that suggests a single resolution of the dispute would
be expeditious, the claim could go forward . . . [T]he juridical-link doctrine has been held not to

26   apply to standing questions at the pleading stage. The doctrine, developed in the context of class
certification analysis under [Rule] 23, should properly remain in the analysis of adequacy and

27   typicality of plaintiffs for which it was originally conceived."  *Siemers v. Wells Fargo & Co.*, 2006
WL 3041090, *6 (N.D. Cal. 2006)(internal quotes and citations omitted).

28

1    As Defendants correctly argue, despite his burden to establish standing, Plaintiff has failed

2   to cite a single case supporting his position that he can seek a nationwide class action against

3   the Non-Contracting Defendants for breach of contracts against their insureds.   The three

4   cases Plaintiff cites to support his position are not persuasive as none of them were class

5   action cases.  *See Delos v. Farmers Ins. Group, Inc.*, 93 Cal.App.3d 642 (1979); *Tran v.*

6   *Farmers Group, Inc.*, 104 Cal.App.4th 1202 (2002); *Forest v. Equitable Life Assurance*

7   *Society*, 2001 WL 1338809 (N.D. Cal. 2001).  *Delos*, *Tran*, and *Forest* were cases in which

8   a single insured asserted breach of contract and related bad faith claims against the insurer

9   with whom the insured had a contract with; in addition, the insured asserted these claims

10   against the closely interconnected insurance entities based on theories such as joint venture,

11   alter ego and single business enterprise.  *See id.*  In these three cases, the courts held that the

12   single insured could sue both the contracting insurance company and the interconnected

13   insurance entities as they were joint venturers, alter egos, or single business enterprises.  *See*

14   *id.*  The claims at issue against the contracting insurer and the non-contracting insurers in

15   these cases were all based on one contract - the contract to which plaintiff was a party to.

16   *See id.*

17    As Defendants correctly argue, the joint venture, alter ego, and single business enterprise

18   allegations are forms of derivative liability arising from the underlying substantive cause of

19   action.  *See*, *e.g.*, *Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999)("A

20   request to pierce the corporate veil is only a means of imposing liability for an underlying

21   cause of action and is not a cause of action in and of itself."); *Fluorine On Call, Ltd. v.*

22   *Fluorogas* Ltd, 380 F.3d 849, 861 (5th Cir. 2004)("[Plaintiff] proceeded under two distinct

23   theories of derivative liability . . . - alter ego . . . and single business enterprise. . . ."); *In re*

24   *Grothues,* 226 F.3d 334, 337-38 (5th Cir. 2000)(alter ego theory is a remedy to enforce a

25   substantive right, not an independent cause of action); *Samson v. Riesing*, 215 N.W.2d 662,

26   668-69 (Wis. 1974)("Vicarious liability, imputed negligence, and joint venture are essentially

27   doctrines that are applicable to a situation where the negligence of one party is proved and

28   it is sought to hold another party liable, either because, from a plaintiff's view, the other party

is financially responsible or, from a defendant's view, to share the burden of the liability."); *Western Oil & Gas. JV, Inc. v. Griffiths*, 91 Fed. Appx. 901, 904 (5th Cir. 2003)("Like the alter-ego doctrine, the single business enterprise doctrine is an equitable remedy which applies when the corporate form is 'used as part of an unfair device to achieve an inequitable result.' This doctrine is no more viable for Western than the alter ego doctrine. Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action. Absent a cognizable cause of action this remedy is unavailable."); *Hennessey's Tavern, Inc. v. American Air Filter Co., Inc.*, 204 Cal. App. 3d 1351, 1359 (1988) (alter ego is "not itself a claim for substantive relief," but rather is a means to "disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice.").  None of the cases cited by Plaintiff (i.e., *Delos*, *Tran*, and *Forest*) stand for the proposition that by entering into a contract with one defendant, a plaintiff has standing to pursue class action claims on behalf of class members who had separate contracts with that defendants' joint venturers or alter egos.

Accordingly, based on the foregoing, the Court finds that Plaintiff has failed to meet his burden of showing that he has standing to sue the Non-Contracting Defendants for breach of contracts (and the claims arising therefrom) with their insureds.  Plaintiff's standing is limited to suing Farmers Arizona and the Non-Contracting Defendants for damages to Farmers Arizona's insureds like himself.  Thus, Plaintiff's purported class action may still proceed only on behalf of Farmers Arizona's insureds against Farmers Arizona and the Non-Contracting Defendants.  The Court notes that Plaintiff may be able to remedy some his standing limitations by simply adding additional named plaintiffs that have pertinent claims to establish broader standing; as such, Plaintiff shall have 30 days from the filing date of this Order to name additional plaintiffs to remedy any remaining standing limitations.

**C.  Remaining Issues: Sales Tax Allegations and Joint Venture**

Defendants seek to dismiss Plaintiff's allegations that he was not paid sales tax relating to the property damage claim at issue in this case.  As Defendants submitted evidence in

1   support of this motion for dismissal arguing that Plaintiff was rightfully paid all sales tax

2   owed, the Court will treat the motion as one for summary judgment. *See* FED.R.CIV.P. 12(b).

3   In response, Plaintiff correctly argues that a summary judgment motion is premature at this

4   early stage of the litigation as Plaintiff has not had the opportunity to conduct any relevant

5   discovery; Plaintiff has requested additional time to obtain discovery.   Pursuant to

6   FED.R.CIV.P. 56(f), where a party opposing a motion for summary judgment requests

7   additional time, a court may "order a continuance to permit affidavits to be obtained or

8   depositions to be taken or discovery to be had or may make such other order as is just." *See*

9   *also Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck*

10  *Reservation*, 323 F.3d 767, 763-764 (9th Cir. 2003)(Rule 56(f) "provides a device for litigants

11  to avoid summary judgment when they have not had sufficient time to develop affirmative

12  evidence"; where a party has not had adequate time to conduct discovery, "district courts

13  should grant any Rule 56(f) motion fairly freely.").   Accordingly, Plaintiff's request is

14  granted.  Defendants motion to dismiss/motion for summary judgment is denied without

15  prejudice at this time.

16      Defendants initially sought to dismiss Plaintiff's joint venture allegations, but

17  subsequently withdrew this motion to dismiss as indicated in their Reply Brief.   *See*

18  Defendants' Reply Brief at 10.   After withdrawing the motion to dismiss, Defendants

19  indicated that they also asserted a motion for summary judgment on this same claim. For the

20  same reasons stated above, Defendants motion for summary judgment pertaining to this issue

21  is premature.   Defendants motion for summary judgment is denied without prejudice.

22  Plaintiff shall have sufficient time to conduct necessary discovery pertaining to the claims

23  at issue.

24

25

26

27

28

1    **IV. <u>CONCLUSION</u>**

2       Accordingly, IT IS HEREBY ORDERED as follows:

3    (1) Defendants' motions seeking to dismiss portions of Plaintiff's case are **denied in part**

4    **and granted in part** as discussed in the text of this Order.

5

6       DATED this 6th day of February, 2008.

7

8

9

10

11

12

13                                    *Frank R. Zapata*
14                                    FRANK R. ZAPATA
                                      United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28